IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>VICTORIA ESTRELLA CONCEPCION<br>and WILLIAM HENRY CONCEPCION,<br>doing business as Henry's,<br><br>    Defendants.<br>                                         / | No. C 10-05092 WHA<br><br><br><br>**ORDER GRANTING<br>DEFAULT JUDGMENT** |

## INTRODUCTION

Plaintiff brings this action against defendants for unlawfully intercepting and broadcasting a boxing match for which plaintiff owned the exclusive television distribution rights. Default has been entered against defendants, and plaintiff now moves for default judgment. For the following reasons, the motion is **GRANTED**.

## STATEMENT

Plaintiff J & J Sports Productions, Inc., is a California company, which owned the exclusive nationwide television distribution rights to "Firepower": Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program, telecasted nationwide on November 14, 2009 (Br. 1).

Defendants Victoria Estrella Concepcion and William Henry Concepcion are the owners and operators of Henry's commercial establishment in South San Francisco (Compl. ¶ 7). They

did not enter into a subleasing agreement with plaintiff in order to broadcast the program. The interstate transmission of the program was encrypted and was only made available to plaintiff's customers who had paid the licensing fees (Compl. ¶ 11).

The complaint alleges that on the date of the nationwide telecast of the program, defendants, with willful knowledge that the program was not to be intercepted by an unauthorized entity, intercepted and displayed the program at Henry's (Compl. ¶ 13).

On the date of that telecast, investigator Jeff Kaplan observed the alleged unlawful exhibition of the program at Henry's. Kaplan observed three televisions and noted that Henry's had a 60-person capacity. Kaplan's affidavit reports "50+" people after three separate head counts, without providing any further clarification as to the range implied by the plus sign. He also noted that there was no required cover charge (Br. 6; Kaplan Aff. 1). Plaintiff did not submit any evidence as to how defendants intercepted the program, whether they advertised, or whether they marked up food prices during the program.

Plaintiff commenced this action on November 10, 2010. The complaint was served on defendants on January 14 (Dkt. Nos. 11–12). They failed to answer the complaint by the required deadline and have not subsequently appeared (Riley Decl. ¶ 2). The Clerk entered default against defendants on March 3. Plaintiff now moves for default judgment and seeks to recover damages under 47 U.S.C. 605 and for conversion. Plaintiff's motion for default judgment also asserts the right to recover costs and attorney's fees pursuant to Section 605 (Br. 3). Oral argument was held on May 12, and Attorney Thomas Riley appeared for plaintiff. Neither defendants nor any representatives for defendants appeared.

**ANALYSIS**

**A.  DEFAULT JUDGMENT**

FRCP 55(b)(2) permits a court, following an entry of default, to enter default judgment against a defendant. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The scope of relief allowed through default judgment is limited by FRCP 54(c), which states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

2

The court of appeals considers several factors in exercising its discretion to award default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). After entry of default, well-pled allegations in the complaint regarding liability are taken as true, except as to amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Consequently, *Eitel* factors two, three, and five weigh in favor of the entry of default judgment. For the following reasons, each of the remaining factors also favor entry of default judgment.

*First*, if the motion were denied, plaintiff would be without a remedy. Failure to enter a default judgment would therefore result in prejudice to plaintiff.

*Second*, the sum of money at stake is moderate. In general, the fact that a large sum of money is at stake is a factor disfavoring default judgment. *See Eitel*, 782 F.2d at 1472 (the fact that $2,900,000 was at stake, when considered in light of the parties' dispute as to material facts, supported the Court's decision not to enter judgment by default). In the present action, plaintiff has asked for a $2,200 relief on the conversion claim plus damages up to the $110,000 maximum allowed cumulatively under 47 U.S.C. 605(e)(3)(C)(i)(II) and (e)(3)(C)(ii) (Br. 6, 9). Although a substantial amount, this is a far cry from the $2,900,000 sum contemplated in *Eitel*. This factor weighs in favor of entering default judgment.

*Third*, it is unlikely that default was the result of excusable neglect. This action was filed back in November 2010, and defendants were properly served. Defendants are presumably aware of the payment obligations for which they are responsible and were put on notice of this action against them.

*Fourth*, although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate. After careful consideration of all of the *Eitel* factors, this order finds that the entry of default judgment is warranted.

3

### B. SCOPE OF RELIEF

Plaintiff's complaint sought relief for conversion and violations of 47 U.S.C. 605, 553, and California Business and Professions Code 17200. In the application for default judgment, plaintiff claims conversion and violation of 47 U.S.C. 605 and 553, but in its memorandum in support, by contrast, plaintiff only requests conversion damages and damages assessed under 47 U.S.C. 605, including costs and attorney's fees pursuant to that code section (Dkt. No. 22; Br. 6, 9). A conversion requires "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rassmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). A claim under Section 605 can be established when defendants engage in unlawful interception of "radio communication," whereas a Section 553 claim concerns interception "over a cable system." Section 605 allows for damages to be enhanced above conversion damages and costs and attorney's fees up to $110,000, while Section 553 allows for up to $60,000. 47 U.S.C. 605(e)(3)(C)(i–ii) and 553(c)(3)(A–B). Reasonable attorney's fees *shall* be awarded under Section 605 and *may* be awarded under Section 553. 47 U.S.C. 605(e)(3)(B)(iii) and 553(c)(2)(C).

#### 1. CONVERSION

As plaintiff's factual allegations are taken as true, they support all three elements of a conversion claim. Plaintiff has purchased licensing rights to the program at issue. Given that the defendants' establishment had a capacity of 60 people, they would have been required to pay $2,200 for a subleasing agreement with plaintiff (Gagliardi Aff. ¶ 8). As defendants did not enter into an agreement and pay the fee, plaintiff is entitled to $2,200 in conversion damages. Accordingly, this order awards $2,200 for the conversion claim.

#### 2. DAMAGES UNDER SECTIONS 605 AND 553

##### i. Consistency of Treatment

As background, plaintiff J & J Sports Productions, Inc., and Attorney Riley are not strangers to this court or this district. In fact, Attorney Riley appears to be counsel of record in 96 open cases in our district. At the hearing on the instant motion, Attorney Riley represented that

4

1 the assigned judge, by not awarding greater total damages in cases like this one, was out of step
2 with other district court judges.[1]

3 While courts that have awarded similar types of damages refer to the damages in different
4 ways, this order will refer to all similar damages under either Sections 605 or 553 as enhanced
5 damages, excluding costs and attorney's fees under those code sections and also excluding
6 damages for the conversion claim. Total damages will refer to enhanced damages and conversion
7 damages.

8 At the hearing on this motion, Attorney Riley represented that other judges often award
9 enhanced damages closer to the maximum of $110,000 under Section 605.[2] He claimed that the
10 proposed total award was "literally a tenth of probably the average award that we see on a
11 nonegregious violation . . . on an event of this caliber" (Tr. 5).

12 Upon a search of decisions, however, involving J & J as plaintiff and Attorney Riley as
13 counsel, where plaintiff moved for default judgment pursuant to Section 605, here are the actual
14 results. Of 16 awards based on Section 605 that were found in our district, the average enhanced
15 damages was $8,413, and the average total damages was $10,336.

16 The undersigned has granted default judgment awards to Riley and J & J in three cases
17 prior to this one, and all under Section 553.[3] For these, the average enhanced damages was $667,
18 and the average total damages was $3,700. Comparing these awards against the 11 total awards
19 based on Section 553 that were found in our district, the average enhanced damages was $11,462,
20 and the average total damages was $13,053.[4]

---

[1] Although at the hearing the judge had proposed $500 in enhanced damages and $2,200 in conversion damages, for a total of $2,700, this order settles instead on $1,000 in enhanced damages and $2,200 in conversion damages, for a total of $3,200.

[2] The maximum damages under 47 U.S.C. 605(e)(3)(C)(i)(II) is $10,000, and the maximum under (e)(3)(C)(ii) is $100,000, for a total of $110,00 under the code section.

[3] The undersigned judge has had other Riley-J & J cases, but not that resulted in default judgment.

[4] Docket-by-docket research was done to obtain these numbers in our district.

5

State-wide, outside of our district, district court decisions award damages often under both Sections 605 and 553, and the average enhanced damages was $28,533, and the average total damages was $29,124.[5]

Although it seems correct that the assigned judge has been less generous than other judges, Attorney Riley is incorrect in suggesting that most judges award the maximum or close thereto.

### ii. Whether to Apply Section 605 or 553

Plaintiff requests damages under Section 605, which prohibits "radio" or satellite interception, but has not provided evidence that transmission was by satellite. As satellite is different from cable, this order shall examine whether application of either or both Sections 605 and 553 is appropriate. In assessing which scenario is more likely given the facts of this specific incident, where plaintiff did not report seeing a satellite dish after inspecting the premises, damages are more appropriately analyzed under Section 553. *See J & J Sports Prods., Inc. v. Juanillo*, No. C 10-01801 WHA, 2010 WL 5059539, at *2 (N.D. Cal. Dec. 6, 2010).

### iii. Factors Used to Determine Amount of Damages

Applying Section 553 as the relevant statute, enhanced damages may be awarded up to a $60,000 maximum. 47 U.S.C. 553(c)(3)(A)(ii) and (c)(3)(B). The court of appeals has not set forth specific factors to use in determining the appropriate amount of such enhancements. District courts have thus considered different factors to determine culpability and to achieve proper compensation and deterrence. These include: use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant. Repeated violations may also justify enhanced damages.[6]

---

[5] All of the cases supporting the figures cited above can be found in an appendix to this order.

[6] Two representative cases are: *J & J Sports Prods., Inc. v. Herrera*, No. 1:10-cv-02090-AWI-SKO, 2011 WL 643413, at *4 (E.D. Cal. Feb. 17, 2011) (assessing damages based on use of cover charge, increase in food price, presence of advertisements, number of patrons, number of televisions used, impact of offender's conduct on claimant, and whether or not offender was engaged in a repeated offense); and *J & J Sports Prods., Inc. v. Paniagua,* No. 10–CV–05141–LHK, 2011 WL 996257, at *2 (N.D. Cal. Mar. 21, 2011) (using multiple violations as a factor in increasing damages from $2,200 to $4,400).

6

Considering these factors, the extent of enhanced damages in the present action should be limited because defendants are apparently first-time offenders, and plaintiff has provided no evidence of promotional activities or extensive exploitation of the intercepted programming. Although defendants had "50+" patrons and used three televisions, *these two factors alone have not justified maximum total damages in any prior district court decisions involving plaintiff.* A larger establishment may normally have more patrons and televisions, so those numbers do not necessarily justify greater damages. Awarding the maximum would leave no room to differentiate defendants from more culpable offenders who commit multiple offenses or who actively promote and exploit their illegal acts.

Plaintiff asserts that awarding damages closer to the maximum would more effectively deter future offenses, reduce the amount of its investigative work, and appease bar owners whose businesses were allegedly affected by competition from defendants. Plaintiff cites several decisions awarding $250 to $15,000 in enhanced damages and asserts that such cases were a "major reason" for continued piracy (Br. 15). However, plaintiff provided no evidence to support this assertion and no evidence that any particular amount of damages would be necessary to increase deterrence. Nor has plaintiff submitted declarations from bar owners miffed because they did subscribe lawfully, as claimed at the hearing.

In light of the given facts, this order awards $1,000 more than what defendants would have had to pay for a proper license, $2,200, for a total award of $3,200. That amount is a reasonable one in the instant case, excluding costs and attorney's fees and damages for conversion, especially for first-time offenders for whom plaintiff provided no evidence of advertising, cover charge, or increased food price. This amount will deter first-time offenders while compensating plaintiff. The undersigned declines to award further damages under Sections 553(c)(3)(A)(ii) and (c)(3)(B) because plaintiff has not demonstrated that any additional amount is warranted. If, however, the same defendants (or an alter ego) do it again later on, the enhanced damages should be substantially increased for that offense.

7

### iv. Costs and Attorney's Fees

Plaintiff's motion requests costs and attorney's fees under Section 605. As reviewed above, Section 553 is the properly applicable code section. Under Section 605, an award is mandatory, but under Section 553, it is not. Obviously, the Court is not required to grant the award under either code section if plaintiff does not provide any supporting evidence, as reasonable costs and attorney's fees cannot be determined. In the instant motion, plaintiff did not ask for a specific amount of costs and attorney's fees in either the application for default judgment or the memorandum in support (Dkt. No. 22; Br. 3). Neither did plaintiff provide supporting documents of expenses or rates. Given the lack of a sworn record, this order denies an award of costs or attorney's fees, without prejudice to any post-judgment request if the law allows it.

## CONCLUSION

Plaintiff's motion for default judgment is **GRANTED**. For the reasons stated, plaintiff shall be awarded $2,200 in conversion damages and $1,000 in enhanced damages under Section 553. Judgment will be entered separately in favor of plaintiff and against defendants in the amount of $3,200.

**IT IS SO ORDERED.**

Dated: June 7, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**APPENDIX**

**JUDGE ALSUP DECISIONS INVOLVING ATTORNEY RILEY AND J & J SPORTS**

|  | Actual Damages | Enhanced Damages (605) | Enhanced Damages (553) | Total Damages | Costs and Attorney's Fees |
|---|---|---|---|---|---|
| *J & J Sports Prods., Inc. v. Juanillo* NO. C 10-01801 WHA, 2010 WL 5059539 (order signed Dec. 6, 2010). | 2000 | 0 | 500 | 2500 | 0 |
| *J & J Sports Prods., Inc. v. Cardoze* NO. C 09-05683 WHA, 2010 WL 2757106 (order signed July 9, 2010). | 4200 | 0 | 1250 | 5750 | 1500 |
| *J & J Sports Prods., Inc. v. Ro* NO. C 09-02860 WHA, 2010 WL 668065 (order signed Feb. 19, 2010). | 2600 | 0 | 250 | 2850 | 1500 |

**OTHER N.D. CAL. DECISIONS INVOLVING ATTORNEY RILEY AND J & J SPORTS**

|  | Judge | Actual Damages | Enhanced Damages (605) | Enhanced Damages (553) | Total Damages | Costs and Attorney's Fees |
|---|---|---|---|---|---|---|
| *J & J Sports Prods., Inc. v. Delatorre* 4:10-cv-04168-SBA (order signed Apr. 28, 2011). | Armstrong | 2200 | 6000 | 0 | 8200 | 2825 |
| *J & J Sports Prods., Inc. v. Dailey* No. 4:10-cv-01874-SBA (order signed Apr. 19, 2011). | Armstrong | 1600 | 10000 | 0 | 11600 | 0 |
| *J & J Sports Prods., Inc. v. Dailey* No. 3:09-cv-04904-CRB (order signed July 23, 2010). | Breyer | 1800 | 15000 | 0 | 16800 | 0 |
| *J & J Sports Prods., Inc. v. Cardoze* 3:10-cv-01875-SC (order signed Mar. 9, 2011). | Conti | 2800 | 2000 | 0 | 4800 | 0 |

| | | | | | | |
|---|---|---|---|---|---|---|
| *J & J Sports Prods., Inc. v. Cardoze* NO. 09-4944 SC, 2010 WL 3702836 (order signed Oct. 4, 2010). | Conti | 1800 | 2000 | 0 | 3800 | 5887 |
| *J & J Sports Prods., Inc. v. Fraide* NO. 5:10-CV-04180-JF/HRL, 2011 WL 566829 (order signed Feb. 14, 2011). | Fogel | 2200 | 0 | 57800 | 60000 | 0 |
| *J & J Sports Prods., Inc. v. Cortez* NO. 5:10-CV-02717-JF/PSG, 2011 WL 311375 (order signed Jan. 28, 2011). | Fogel | 800 | 0 | 15928 | 16728 | 0 |
| *J & J Sports Prods., Inc. v. Guzman* NO. 5:09-CV-05124 JF/HRL, 2010 WL 4055934 (order signed Oct. 14, 2010). | Fogel | 1200 | 0 | 39400 | 40600 | 0 |
| *J & J Sports Prods., Inc. v. Medinarios* NO. C 08-0998 JF (RS), 2008 WL 4412240 (order signed Sept. 25, 2008). | Fogel | 123 | 6000 | 0 | 6123 | 0 |
| *J & J Sports Prods., Inc. v. Canedo* NO. C 09-01488 PJH, 2009 WL 4572740 (order signed Dec. 1, 2009). | Hamilton | 0 | 0 | 1200 | 1200 | 0 |
| *J & J Sports Prods., Inc. v. Basto* NO. C 10-1803 SI, 2011 WL 566843 (order signed Feb. 14, 2011). | Illston | 2800 | 3000 | 0 | 5800 | 0 |
| *J & J Sports Prods., Inc. v. Miranda* NO. C 09-1037 SI, 2009 WL 3837273 (order signed Nov. 16, 2009). | Illston | 1500 | 1000 | 0 | 2500 | 1873 |
| *J & J Sports Prods., Inc. v. Bonilla* NO. 10-CV-05140-LHK, 2011 WL 1344346 (order signed Apr. 8, 2011). | Koh | 2200 | 4400 | 0 | 6600 | 0 |

| Case | Judge | | | | | |
|---|---|---|---|---|---|---|
| *J & J Sports Prods., Inc. v. Paniagua* NO. 10-CV-05141-LHK, 2011 WL 996257 (order signed Mar. 21, 2011). | Koh | 2200 | 6600 | 0 | 8800 | 0 |
| *J & J Sports Prods., Inc. v. Ho* NO. 10-CV-01883-LHK, 2010 WL 3912179 (order signed Oct. 5, 2010). | Koh | 1600 | 11600 | 0 | 13200 | 0 |
| *J & J Sports Prods., Inc. v. Guzman* NO. C 08-05469 MHP, 2009 WL 1034218 (order signed Apr. 16, 2009). | Patel | 2000 | 0 | 2000 | 4000 | 0 |
| *J & J Sports Prods., Inc. v. Guzman* 3:09-cv-02866-VRW (order filed Sept. 10, 2010). | Walker | 2600 | 40000 | 0 | 42600 | 0 |
| *J & J Sports Prods., Inc. v. Cardoze* 5:09-cv-04204-JW (order signed Apr. 7, 2010). | Ware | 1600 | 1000 | 0 | 2600 | 2506 |
| *J & J Sports Prods., Inc. v. Dailey* No. 5:09-cv-04205-JW (order signed Apr. 7, 2010). | Ware | 1000 | 5000 | 0 | 6000 | 3811 |
| *J & J Sports Prods., Inc, v. Montecinos* NO. C 09-02604 JSW, 2010 WL 144817 (order signed Jan. 11, 2010). | White | 3750 | 15000 | 0 | 18750 | 0 |
| *J & J Sports Prods., Inc. v. Doan* NO. C-08-00324 RMW, 2008 WL 4911223 (order signed Nov. 13, 2008). | Whyte | 0 | 0 | 2500 | 2500 | 0 |
| *J & J Sports Prods., Inc. v. Manzano* NO. C-08-01872 RMW, 2008 WL 4542962 (order signed Sept. 29, 2008). | Whyte | 0 | 0 | 250 | 250 | 0 |

| | | | | | | |
|---|---|---|---|---|---|---|
| *J & J Sports Prods., Inc. v. Huezo* NO. C 09-4906 CW, 2011 WL 1134265 (order signed July 2, 2010). | Wilkin | 1200 | 6000 | 0 | 7200 | 0 |
| *J & J Sports Prods., Inc. v. Mosley* NO. C-10-5126 CW EMC, 2011 WL 2066713 (order signed May 25, 2011). | Wilkin | 2200 | 0 | 5000 | 7200 | 2611 |

**OUT-OF-DISTRICT DECISIONS INVOLVING ATTORNEY RILEY AND J & J SPORTS**

| | Judge | Actual Damages | Enhanced Damages (605 and 553) | Total Damages | Costs and Attorney's Fees |
|---|---|---|---|---|---|
| *J & J Sports Productions, Inc. v. Torres* No. CIV S-10-3012 JAM EFB (TEMP), 2011 WL 999199 (E.D. Cal.) (order signed Mar. 17, 2011). | Brennan | 0 | 25000 | 25000 | 0 |
| *J & J Sports Productions, Inc. v. Hernandez* No. CIV. S-09-3389-GEB-KJN, 2010 WL 2650526 (E.D. Cal.) (order signed July 1, 2010). | Burrell | 0 | 10000 | 10000 | 0 |
| *J & J Sports Productions, Inc. v. Pollard* Civ. No. S-10-3047 KJM GGH, 2011 WL 777931 (E.D. Cal.) (order signed Feb. 28, 2011). | Hollows | 0 | 40000 | 40000 | 0 |
| *J & J Sports Productions, Inc. v. Rodriguez* No. S-10-1044 KJM GGH, 2011 WL 778201 (E.D. Cal.) (order signed Feb. 28, 2011). | Hollows | 0 | 23328 | 23328 | 0 |
| *J & J Sports Productions, Inc. v. Rafael* No. CIV S-10-1046 LKK GGH, 2011 WL 445803 (E.D. Cal.) (order signed Feb. 8, 2011). | Hollows | 0 | 46000 | 46000 | 0 |

| Case | Judge | | | | |
|---|---|---|---|---|---|
| *J & J Sports Productions, Inc. v. Herrera* No. 1:10-cv-02090-AWI-SKO, 2011 WL 643413 (E.D. Cal.) (order signed Mar. 16, 2011). | Ishii | 2200 | 15000 | 17200 | 0 |
| *J & J Sports Productions, Inc. v. Villalobos* No. 1:09-cv-01130-AWI-DLB (E.D. Cal.) (order signed Jan. 30, 2010). | Ishii | 2600 | 80000 | 82600 | 0 |
| *J & J Sports Productions, Inc. v. George* No. CV-F-08-0090 AWI DLB (E.D. Cal.) (order signed Oct. 29, 2008). | Ishii | 0 | 20000 | 20000 | 0 |
| *J & J Sports Productions, Inc. v. George* No. 1:08-CV-00091-AWI-DLB, 2008 WL 4224616 (E.D. Cal.) (order signed Aug. 20, 2008). | Ishii | 0 | 20000 | 20000 | 0 |
| *J & J Sports Productions, Inc. v. Guzman* No. 1:08-CV-00091-AWI-DLB, 2008 WL 3905972 (E.D. Cal.) (order signed Aug. 20, 2008). | Ishii | 0 | 30000 | 30000 | 0 |
| *J & J Sports Productions, Inc. v. Pollard* No. CIV S-10-1066 JAM GGH, 2011 WL 356087 (E.D. Cal.) (order signed Mar. 3, 2011). | Mendez | 0 | 32400 | 32400 | 0 |
| *J & J Sports Productions, Inc. v. Rodriguez* No. CIV S-08-1140 JAM DAD, 2010 WL 796942 (E.D. Cal.) (order signed Mar. 26, 2010). | Mendez | 800 | 5000 | 5800 | 0 |
| *J & J Sports Productions, Inc. v. Ferreyra* No. CIV S-08-128 LKK KJM, 2008 WL 4104315 (E.D. Cal.) (order signed Aug. 28, 2008). | Mueller | 0 | 100000 | 100000 | 0 |
| *J & J Sports Productions, Inc. v. Olivares* No. 1:10-cv-01708-LJO-DLB (E.D. Cal.) (order signed Apr. 15, 2011). | O'Neill | 2200 | 60000 | 62200 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| *J & J Sports Productions, Inc. v. Lupian* No. 1:10-cv-02104 LJO GSA (E.D. Cal.) (order signed Apr. 29, 2011). | O'Neill | 2200 | 8000 | 10200 | 0 |
| *J & J Sports Productions, Inc. v. Flores* No. 1:08cv0483 LJO DLB (E.D. Cal.) (order signed Aug. 14, 2009). | O'Neill | 0 | 20000 | 20000 | 0 |
| *J & J Sports Productions, Inc. v. Esquivel* No. 1:08-cv-00392 LJO GSA (E.D. Cal.) (order signed Nov. 12, 2008). | O'Neill | 0 | 30000 | 30000 | 0 |
| *J & J Sports Productions, Inc. v. Betancourt* No. 3:08-cv-00937 JLS POR, 2009 WL 3416431 (S.D. Cal.) (order signed Oct. 20, 2009). | Sammartino | 0 | 6000 | 6000 | 0 |
| *J & J Sports Productions, Inc. v. Juarez*, No. 2:10-1071 WBS KJN (TEMP), 2011 WL 221634 (E.D. Cal.) (order signed Feb. 10, 2011). | Shubb | 0 | 25000 | 25000 | 0 |
| *J & J Sports Productions, Inc. v. Lemus* No. 1:10-cv-02085 OWW JLT, 2011 WL 703606 (E.D. Cal.) (order signed Feb. 17, 2011). | Wanger | 2200 | 1000 | 3200 | 0 |
| *J & J Sports Productions, Inc. v. Lopez* No. 1:08-cv-00388-OWW-TAG, 2008 WL 3889749 (E.D. Cal.) (order signed Aug. 19, 2008). | Wanger | 0 | 30000 | 30000 | 0 |
| *J & J Sports Productions, Inc. v. Hernandezsilva* No. 10-CV-0389 W(WVG), 2010 WL 3702593 (S.D. Cal.) (order signed Sept. 15, 2010). | Whelan | 800 | 1000 | 1800 | 0 |